### A. C. GILBERT CO. v. UNITED ELECTRICAL MFG. CO. (two cases).
### Nos. 2768, 3368.

District Court, E. D. Michigan, S. D.
Dec. 11, 1930.

See also (D. C.) 33 F.(2d) 760.

Stuart C. Barnes, of Detroit, Mich., and Henry E. Rockwell, of New Haven, Conn., for plaintiff.

Owen & Owen, of Toledo, Ohio, for defendant.

TUTTLE, District Judge.

We have two separate suits, one involving the patent No. 1,407,789 to Erhardt February 28, 1922. That is a patent on the combination of a stand set over a glass or receptacle, the contents of which are to be mixed, and placing a motor with a handle on it, to be placed down through the top of that stand; the stand being so arranged that it will permit the depending agitator to pass through the top of the stand, and the motor to rest in the top of the stand and be held there in position while the motor operates and agitates the contents, so that the housewife or the soda fountain clerk can go away and leave it while the agitator works and mixes. The operator can do something else and come back again, or the operator can take it and use it by hand in some other place. It is a useful thing.

The amount of invention involved in it must be determined, of course, by studying the prior art, and deciding what Erhardt did over the prior art. There is considerable in the prior art. It seems to me that Pettifils' patent No. 1,199,920 in 1916 and the publication in the Electrical Record of March, 1916, showing the Lindstrom-Smith Company device, intended for identically the same purpose and used for identically the same purpose, must defeat the patent of Erhardt.

I do not discover anything new that Erhardt did, except to make the motor and the stand entirely separate so they could be removed, one from the other, easily and readily. I cannot discover anything in the way that it is done that is enough to get a patent. I cannot discover any genius in it. I do not think the mechanic would need to be very skilled in order to do that thing.

It cannot be said that Erhardt was the one that first thought of using a motor in this way, letting the motor do the work, fixing the stand or something to hold it in position so it could do the work, while the operator could do something else. There is nothing new about the motor. There is nothing about that patent that revolutionized any art. There did not seem to be any great advantage in that over the form shown in the Electrical Record. So far as there was an advantage in using the motor separately, if one wanted to, he could take the one shown in the Electrical Record in 1916 and fix it so he could use it. In fact, I do not know why the frame and all could not be stuck down into the eggs, if they wanted to, and a whole pan of eggs be beaten, with the form shown in the Electrical Record in 1916. If they did discover that the frame was a nuisance, too easy to get dirty, and they did not want to bother with it, it would not require much of a mechanic to arrange it so that they could leave the stand and glass and take the motor out. Or in Pettifils if they wanted to fix

that so that the motor part could be easily removed, thousands of mechanics would think of dozens of ways of releasing that in that frame.

In Pettifils we have the single standard, and in the Electrical Record we have the standard with several legs. Erhardt shows it with three legs.

I am unable to see anything that goes beyond the skill of the ordinary mechanic who would do work of that kind, or to make that change, if they desired it. The refinements of the kitchen have been developing in recent years, and along with them we find the developments here.

One of the next steps taken we find shown in the patent in the second suit, the one to Gilbert, No. 1,698,363 of January 8, 1929, which contains further refinements and further details. There is a patent which, as I see it, simply groups together a lot of different refinements on different parts, not very closely related to each other, all tending to a common cause in a way, but no more so than where some very skillful carpenter should begin to build a little finer house than anybody else builds. He fixes his windows better and his floors better, his walls better, does each part of it a little bit better and arranges it a little more convenient, and gets a combination that would be much finer, but he could not get a patent on it. He could not prevent his next-door neighbor from copying all or any part of it. It would not be very good taste or very neighborly, but if he did it, he could not help it.

. So I find Gilbert's a very fine, very wonderful little instrument for the kitchen and for the housewife, each part of it nicely made, but the refinements in each part have very little to do with the other parts and none of the steps rise to the dignity of genius, and none of them go far enough to justify a man's being rewarded with a patent. Each of them, or the combination of all of them, is the work of good mechanics. Taking the base, for example, there are many things mentioned about that base, but there is not any one of them that entitles it to a patent, nor do all of them taken together entitle it to a patent. We have something that we want to prevent from tipping over. We always know enough to make a large base. Some of them do it this way and some of them do not, but they know how to do it. The principles of the center of gravity with relation to the size of the base and all that are well known to those who have studied mechanics, and they are well known to those who have never studied mechanics and do not know anything about the subject. It is fine to have those rubbers in the holes and the wide base, but there is nothing about it that approaches anywhere near an invention and no patent should be granted for it under our law. They have the extending ears. All mechanics know that if they want to fasten anything to the floor, they can punch holes in the base and fasten it down, or have an ear extending out, put a hole through that, and fasten it down. Each way has its certain advantages for certain purposes. It is the work of a mechanic and not of a genius. It is not the sort of thing that is entitled to a patent.

You can describe it in technical language or general language. You might describe the building of a house in technical language. You might describe the putting on of the side boards by saying that you lap one edge over the other and drive the nail into the one that went on, and then lap the next one over it so that no nail shall be exposed to the weather, but you could not get a patent on it. It would be what a good mechanic putting side boards on a house would do.

There is the adjustable feature. That is a good thing, a fine thing. They began to make it without it. Then somebody, some mechanic, not a genius, discovered that it would be desirable to make it adjustable. It is a mechanic's job to make it adjustable. It can be done in different ways. This is the usual manner. One could shut his eyes and see pictures of many things adjusted in that way, up and down a standard, just exactly as that is adjustable.

I look at this as I did when I first heard these patents. It ran through my mind then that here are patents that a judge would be justified in declaring void on the reading of them. He would have a right to take judicial notice of what is usual in the mechanical world, and from the date of these patents he would be able to say that it was not genius that produced the drawings and the specification, or the things made under the specifications and the claims.

The curved standard there is helpful. That makes more room. We have all seen hundreds of things that involve that very principle. If you want to make something more roomy, you curve it out. I could pick out many, many things of that kind. It is not invention to do things of that kind. There is the hollowing out of the base for the glass receptacle to rest in. That is one way of helping to center it. You ought not to get a patent for it.

So it is with each of them. When you get through, nothing plus nothing equals nothing. You have a lot of little things that contribute to the final result which are the work of a good business concern. That is the reason why a lot of these have been sold. It is because they have been well made in each part and well advertised.

Then we come to the knock-down feature. That does not affect the way it operates in any way at all. That is another convenience, but there is nothing unusual in the manner in which it is knocked down. When they got to making it, somebody thought it would be a good thing to have it so it could be shipped knocked down, or kept in the house knocked down. Probably that would not be useful for any purpose. The real purpose of it undoubtedly is for shipment. What is there about the knocked-down feature? Somebody might think it would be better if the handle knob were more easily removed. You could get plenty of mechanics who could devise some way to put the handle in and take it out. It has been held for more than twenty years that you cannot get a patent for the idea of having something knocked down. They have been building and shipping houses knocked down for a greater length of time than that. I might see some article, an automobile or anything else, and say, "Why not have that so it can be shipped knocked down?" There is nothing in that idea. Unless there is something in the way that it is made knocked down which goes beyond the mechanic, you cannot get a patent for it. The knocked-down feature is a fine feature, but there is no invention in it.

The motor was invented independent of and prior to these patents. The idea of using a little motor as a mixer, and putting it in a stand where it could be used as a mixer, and left there, was old. There does not seem to be anything from that time on, as far as is disclosed to me, that required more than mechanical skill. There have been some good mechanics who worked at it. You can see that by looking at these devices which I have before me. They were excellent mechanics. There is a good job of Duco on it, but you could not get a patent for a good job of Duco. There is a good job of lettering on it, and it is put in a nice box, which helps sell it; but you cannot get a patent on it.

Somebody invented a motor. Then they thought of agitating with a motor. Then they thought of having some way for it to rest while it did the mixing. From that time on, everything that has been disclosed here

to me has been the work of mechanics. I have not seen anything anywhere that approaches patentability.

As I see my duty, it is to declare both of these patents void as to the claims that are in suit.

I will not take up the subject of infringement, because although these devices have differences, they are mechanical differences. It is true that some of these claims would not read onto them, but the reason is that these claims have described mechanical things. That is the misfortune. Even though courts should hold such patents good, any good mechanic could accomplish the same thing in some other mechanical way. That is what they have done. Defendant has avoided the exact wording of these claims in some respects, because they are mechanical claims, and most of these mere mechanical things can be done in several different mechanical ways. That is what these other good mechanics working for the defendant have done. They have read these claims. There is no question but what they have watched the plaintiff, the big manufacturer, and stolen as many ideas as they could. If I build a nice house and my neighbor wants to build one exactly like it and imitate me, I am helpless. I can say that he is not very original and that he has not any taste of his own, but that is all the good it would do me. A purchaser buying a house would not care whether my house was built first or his.

Both bills are dismissed, with costs.